## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF: ) | Bankruptcy No. 09 B 29262 |
| ) | Chapter 7 |
| William N. Porayko, ) | Judge Pamela S. Hollis |
| Debtor, ) | |
| ) | |
| Travis Crowell ) | |
| ) | Adversary No. 09 A 1132 |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| William N. Porayko, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Travis Crowell ("Crowell"), a creditor in debtor William Porayko's ("Porayko") Chapter 7 bankruptcy, filed this adversary complaint on November 5, 2009, to except his debt from discharge under 11 U.S.C. § 523(a)(6) based on Porayko's prepetition transfer of funds from his TCF bank account ("TCF Account") in violation of a prohibition on the transfer of non-exempt assets contained in a citation to discover assets ("Citation") served upon Porayko. Crowell also objects to Porayko's claimed personal property exemption in $3200 of the funds in the TCF Account. For the reasons stated below, the court finds that Crowell has not presented sufficient evidence to prevail under § 523(a)(6) and overrules Crowell's objection to Porayko's claimed exemption in the TCF Account.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(2)(I).

# FINDINGS OF FACT

1. Debtor, Porayko, is a 53 year old self-employed loan officer and licensed insurance agent.

2. From approximately 2002 through 2008, Porayko was a principal of Windy City Mortgage. Crowell, also held an interest Windy City Mortgage.

3. In 2005, Crowell sold his interest in Windy City Mortgage to Porayko. Porayko executed a promissory note in favor of Crowell in order to purchase Crowell's interest.

4. On October 8, 2008, a default judgment was entered in favor of Crowell and against Porayko based on the promissory note. Following prove up, in Porayko's absence, judgment was entered in favor of Crowell and against Porayko in the amount of $72,887.00.

5. Crowell's attorneys served the Citation on Porayko on October 15, 2008. The Citation was dated October 9, 2008 and provided in part:

> YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property *not exempt from execution or garnishment* belonging to the judgment debtor or to which the judgment debtor may be entitled or which may be acquired by or become due to the judgment debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment. (emphasis added)

6. Since the Citation, Porayko made no extraordinary personal purchases; however, he spent money for basic living expenses, including groceries, gas, and utilities.

7. Porayko was not entirely clear as to what the Citation meant, but he knew it was a long document with several provisions and he attempted to comply with it by coming to court and producing the documents requested by Crowell's attorneys.

8. Porayko could not recall the specific language in the Citation that was served on him, but he attended court at least four times in response to the Citation.

9. Porayko also attended a citation examination on November 20, 2008, conducted by Crowell's attorneys, and produced documents at that time. Porayko was cooperative in answering questions about his assets, including volunteering a number of items.

10. There is no evidence that Porayko lied to or misled the state court or Crowell at any time during the Citation or post-judgment proceedings.

11. Porayko acknowledges that he spent the money listed in Plaintiff's Exhibit 49, which attaches a series of bank statements from the TCF Account as exhibits to a request to admit. The expenditures occurred after the Citation was issued. However, no evidence was presented to indicate the source of the deposits to the TCF Account.

12. At the time of the Citation proceedings, Porayko owned six different investment properties that he rented out.

13. According to Porayko, some of the transfers made from the TCF Account were to pay expenses for maintenance of those investment properties.

14. Porayko hoped to pay off Crowell's judgment by selling the investment properties.

15. When he appeared in court on the Citation, Porayko admitted that he spent funds from the TCF Account, but that the transfers were made to pay ordinary living expenses and maintenance costs for the investment properties he was trying to sell in order to pay Crowell's judgment.

16. Porayko did not have an attorney during the Citation proceedings. The Citation only prohibited the spending of funds that were " . . . not exempt from execution or garnishment . . . ." Porayko assumed he could spend funds for ordinary living expenses

such as medicines and further assumed that he could spend funds to maintain the investment properties, since he told the court and Crowell he was doing this and thought Crowell accepted his plan to sell the investment properties in order to reduce the amount outstanding on the judgment.

17. In June 2009, Porayko was able to sell the 7712 Vine Street property and Crowell received $11,000.00 from that sale. On cross examination, Porayko admitted that the sale did not produce enough money to pay Crowell the $11,000, so he borrowed the money from Ron Friedman. Friedman also had an interest in the Vine Street Property. Porayko received no funds from the sale. The property was sold for less than the amount of debt but Crowell did receive $11,000. This payment was made because Crowell's attorneys refused to release Crowell's judgment lien to permit the sale of the property. See Pl. Ex. 42.

18. Porayko made no payments to Crowell on the judgment from January 2009, through May 2009.

19. Porayko was unable to continue the payments due on his investment properties because the Citation proceedings resulted in a freeze of the TCF Account.

20. On August 10, 2009, Porayko filed this bankruptcy, No. 09 B 29262. His detailed bankruptcy schedules disclose his ownership in six properties, five of them held for investment purposes, a Sea Ray boat, a Ford pick-up truck, computer and stereo equipment, substantial cash rent proceeds, and equity interests in businesses and business licenses. The value of Windy City Mortgage was listed as zero. Windy City Mortgage no longer holds a mortgage license and is not operating.

21. Porayko's schedules included the TCF Account showing funds of $11,535.90, the majority of which Crowell received after this court held Crowell's Citation lien was valid and superior to the trustee's claim to the funds.[1]

22. Porayko's schedules also indicate that the TCF Account was comprised of funds frozen as a result of Crowell's Citation and deposits of "unearned compensation."

23. Porayko claimed a "wildcard exemption" pursuant to 735 ILL. COMP. STAT. 5/12-1001(b) (2004) in $3200 of the funds in the TCF Account.

24. On April 22, 2010, this court ordered that Crowell's Citation lien on $3200 of the funds in the TCF Account was avoided pursuant to 11 U.S.C. § 522(f). TCF was ordered to release $876.44 of unearned compensation, termed the "Sagicor Funds," to Porayko because those funds were not property of the estate. The Sagicor Funds were not part of Porayko's $3200 exemption.

25. On June 8, 2010, the court gave Crowell leave to file an objection to Porayko's claim of exemption after Crowell's attorney inadvertently failed to attend the previous exemption hearing due to a firm docketing error.

## DISCUSSION

### A. Exception to Discharge

As a general rule, exceptions to discharge are narrowly construed in favor of the debtor. *In re Chambers*, 348 F.3d 650, 654 (7th Cir. 2003). Section 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity[.]" One must prove by a preponderance of the evidence that (1) the debtor intended to and caused injury to the creditor or his property interest; (2) the debtor acted

---

[1] This ruling was appealed and is docketed as case number 10C02630, currently pending before Judge James B. Zagel.

5

willfully; and (3) the debtor's actions were malicious. *Colemichael Invs. L.L.C. v. Burke (In re Burke)*, 398 B.R. 608, 625 (Bankr. N.D. Ill. 2008). Whether one's actions are willful and malicious must be inferred from the circumstances surrounding the injury. *Burke*, 398 B.R. at 626 (citing *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 723 (Bankr. N.D. Ill. 2002)).

The Supreme Court has explained that the word "willful" modifies the word "injury," requiring a deliberate or intentional injury for nondischargeability, not just a deliberate or intentional act resulting in injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998). This means that the injury itself must be deliberate or intentional. *Lazzara*, 287 B.R. at 723. Injury is defined as "the violation of another's legal right or the infliction of an actionable wrong." *Mut. Mgmt. Servs., Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 757 (Bankr. N.D. Ill. 2010) (citing *Bukowski v. Patel*, 266 B.R. 838, 844 (E.D. Wis. 2001)).

This is a case of first impression in this district. The only law on point is an unpublished opinion out of the Southern District of Illinois, *Agribank, FCB v. Kuttin (In re Kuttin)*, No. 96-3112, 1996 WL 33406135 (Bankr. S.D. Ill. Dec. 5, 1996). In that case, a creditor served a citation to discover assets on the debtors, a married couple. *Id.* at *1. The debtors had filed Chapter 12 bankruptcy earlier that year and while the case was pending, the husband instructed that income from a crop elevator be paid to his wife; the husband and wife subsequently disposed of the funds in violation of the citation and a sequestration order. *Id.* at *2. The husband first testified that the money paid to his wife constituted "wages" then later claimed they were a gift from the elevator. *Id.* With no analysis, explanation, or citation to any case law, the court found that the debtors' disposition of the funds in violation of the citation and sequestration order resulted in that debt's exception from discharge under § 523(a)(6). *Id.*

6

*Kuttin* is not particularly helpful in determining whether the same result is warranted here. There was no citation to any case law interpreting the "willful and malicious" standard and no explanation of why the debtors' actions were willful and malicious. Nonetheless, the facts of *Kuttin* are distinguishable. For one, no deception exists here. The debtor in *Kuttin* appeared to lie about the reason the money was paid to his wife, suggesting that he knew he was violating the terms of the citation. In contrast, Porayko has been cooperative and forthcoming. He honestly and to the best of his ability answered Crowell's counsel's questions regarding his assets. For another, the *Kuttin* court did not mention exemptions, let alone discuss their applicability to the citation to discover assets and § 523(a)(6). In this case, the exemption of the funds is an issue, at least in determining Porayko's *knowledge* of the funds' exempt status.

To constitute "willfulness" Porayko must have intended to violate the Citation's prohibition on the transfer of non-exempt assets. "Intent to injure" assumes that Porayko understood the exemptions to which he was entitled. Porayko could only have deliberately violated the Citation if he understood he was spending non-exempt money. There has been dispute as to whether Porayko would have been entitled to exempt 85% of his wages under the Wage Deduction Statute, 735 ILL. COMP. STAT. 5/12-803 (2008). The court need not decide this issue. The evidence suggests that Porayko did not fully understand what was and what was not exempt. For a debtor without the assistance of an attorney, this is understandable given the seemingly conflicting law on wage garnishment in citation to discover assets cases. On one hand, there is case law which suggests once wages are paid to a debtor, those wages are fully reachable by creditors.[2] On the other hand, the sample citation notice in 735 ILL. COMP. STAT. § 5/2-1402(b) (2008) provides that:

---

[2] *See Wienco, Inc. v. Scene Three, Inc.*, 29 F.3d 329, 329 (7th Cir. 1994) (holding that it was "absurd" to argue that 85% of one's paid wages were exempt under the Illinois Wage Garnishment Act where the citation to discover

7

> Under Illinois law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 15% of gross weekly wages or (ii) the amount by which disposable earnings for a week exceed the total of 45 times the federal minimum hourly wage . . . whichever is greater.

One could interpret this to mean that there is an exemption for 85% of one's wages whether those wages have been paid to the debtor or not. Moreover, *Weinco* is distinguishable since Porayko is self-employed; technically the Citation was served on his employer, though it did not purport to be a wage garnishment. Again, this conflict need not be resolved. There is insufficient evidence to conclude that Porayko willfully caused injury to Crowell. Porayko acted intentionally—he intended to spend the money, but Crowell has not presented enough evidence to conclude that Porayko fully understood and acted in violation of the Citation.

Since the court has determined that Porayko did not willfully injure Crowell's property interest, it need not determine whether Porayko acted maliciously. However, a brief explanation is helpful.

Malicious is understood to mean "'in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm.'" *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

Crowell cites numerous cases dealing with voluntary security interests.[3] He argues that since debtors are presumed to understand the terms of the contracts they enter into voluntarily,[4] they should also be presumed to understand the legal implications of a three page legal document served upon them which prohibits the recipient from transferring any non-exempt personal property in their possession. For example, in the *Ries* case, the court explained that the debtor's

---

assets was served only on the debtor); *In re Thum*, 329 B.R. 848, 855 (Bankr. C.D. Ill. 2005) ("It is entirely rational that the Legislature would enact wage garnishment caps as a limited, non-bankruptcy protection for accrued wages while leaving the wild card exemption as the sole source of protection for paid wages.").
[3] *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449 (Bankr. N.D. Ind. 2001); *Bank of Findlay v. Sain (In re Sain)*, 101 B.R. 30 (Bankr. C.D. Ill. 1988); *Wisconsin Fin. Corp. v. Ries (In re Ries)*, 22 B.R. 343 (Bankr. W.D. Wis. 1982); *The Nat'l Bank v. Buckley (In re Buckley)*, No. 08-8063, 2009 WL 400628 (Bankr. C.D. Ill. Feb. 17, 2009).
[4] *See e.g. Ries*, 22 B.R. at 347.

knowledge could be inferred from the debtor's experience in his business selling automobiles and his admission that he read the security agreement forbidding the sale of the collateral. *Ries*, 22 B.R. at 347.

These situations are distinguishable from the case at hand. For one, voluntary security agreements do not typically deal with the complexities of exemptions. As discussed above, a debtor representing himself may not fully understand the implications of a citation to discover assets and be able to distinguish exempt from non-exempt property. While Porayko may have transferred funds that were in fact non-exempt, without more this does not establish malice. *See Koplin v. Ginsberg (In re Ginsberg)*, No. 09-A-188, 2009 WL 4891815, at*3 (Bankr. N.D. Ill. Dec. 16, 2009) ("To act 'wrongfully and without authorization' is not the same thing as acting with malice."). This is not to say that a transfer of non-exempt property would not violate the Citation, simply that, without more, such a transfer is not willful and malicious.

As explained above, there was no evidence that Porayko *consciously* intended to violate his duties as described in the Citation. He assumed he could spend funds for ordinary living expenses and to maintain his properties, ultimately to pay off Crowell's debt. Porayko explained this to the court and when Crowell's attorney failed to object, he assumed Crowell consented.

Moreover, Porayko's failure to affirmatively claim as exempt those funds he spent out of the TCF Account may mean that the funds were not exempt in a legal and technical sense, but malice is not established simply because he failed to appreciate the legal steps required to expressly claim the exemption to enable him to spend funds for ordinary living expenses.

Accordingly, Crowell has failed to prove by a preponderance of the evidence that Porayko's expenditures from the TCF Account were willful and malicious.

### B. Objection to Exemption in TCF Account

Crowell argues that Porayko's failure to claim any of the TCF funds as exempt constitutes a waiver of his right to claim an exemption in bankruptcy. For this proposition he cites *Guess?, Inc. v. Chang*, 912 F. Supp. 372 (N.D. Ill. 1995). That case involved a debtor deemed to have waived his exemption due to a failure to timely assert it in state court proceedings. *Id.* at 379. *Guess?* did not involve state court proceedings followed by bankruptcy. Therefore, it has no bearing on whether Porayko waived his exemption in this bankruptcy proceeding. Because Crowell has not claimed Porayko failed to assert the exemption in this proceeding, the court need not address waiver.

Crowell next complains that Porayko lost any right to claim an exemption in the TCF Account by violating the Citation's prohibition on transfer of non-exempt assets and because Porayko exhausted any such exemption with respect to Crowell. Crowell's only reference to supporting law is a quote, taken out of context, from *Schwab v. Reilly*, 560 U.S. ___, 130 S. Ct. 2652, 177 L. Ed. 2d 234 (2010). *Schwab* is not dispositive on this issue as it dealt with the estate's ability to preserve value in exempt assets, not the waiver or exhaustion of an exemption.

In determining whether use of a state exemption "carries over" to bankruptcy, it is important to understand the fundamental difference between state exemptions and bankruptcy exemptions—the purposes which they serve. State exemptions are intended "to secure to the judgment debtor and his family the necessary shelter and personal property required for their welfare in times of difficult economic circumstances." *State Bank of Antioch v. Nelson*, 477 N.E.2d 77, 79 (Ill. App. Ct. 1985). In the context of the Citation, the purpose of the $4000 wildcard exemption was to allow Porayko to buy necessaries and support himself while the prohibition on transfer of assets was in effect. On the contrary, bankruptcy exemptions relate to

the fundamental concept of a "fresh start." *Schwab*, 130 S. Ct. at 2667. In bankruptcy, the exemption is intended to ensure that Porayko comes out of bankruptcy with sufficient property to assist him in his fresh start. H.R. REP. NO. 95-595, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6087 ("[T]here is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start."). Hence, the wildcard exemption in bankruptcy serves a different purpose than the same in state court.

Additionally, the court rejects Crowell's contention that the exemption is creditor-specific. Crowell complains that the exemption is exhausted *with respect to Crowell*. As discussed above, the purpose of the bankruptcy exemption scheme is to protect debtors by allowing them a fresh start. The Bankruptcy Code already provides for creditor-specific exceptions to state exemptions in 11 U.S.C. § 522(c). Since Crowell's debt does not fall within any of those provisions, this contention is rejected.

Thus, the court overrules Crowell's objection to Porayko's claimed exemption in the TCF Account. To rule otherwise would have a profoundly negative effect on exemption law and the overall aims of bankruptcy. If one were to accept Crowell's argument, it would logically follow that anytime a debtor had taken advantage of a state exemption prior to filing bankruptcy, that debtor would be out of luck upon filing bankruptcy. This would create an incentive to stave off bankruptcy as long as possible, potentially dissipating assets that could have been used to satisfy creditors' bankruptcy claims.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of defendant Porayko on Crowell's adversary complaint. Crowell's objection to Porayko's claimed exemption in the TCF Account is overruled.

This opinion constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order will be issued pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTER:

_____
Pamela S. Hollis
United States Bankruptcy Judge

DEC - 7 2010

Dated this ___ day of December, 2010.